UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAMUEL RAMIREZ VILLAGOMEZ,

Petitioner,

v.

JULIO HERNANDEZ, ET AL.,

Respondent.

Case No. 2:26-cv-02730-TLF

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Samuel Ramirez Villagomez, by counsel, filed a 28 U.S.C. § 2241 petition for writ of habeas corpus seeking release from the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"). Dkt. 1. Petitioner filed a prior federal habeas petition arguing he was a member of the *Rodriguez Vazquez* Bond Denial Class[1] and that he was entitled to a bond hearing under 8 U.S.C. § 1226(a).

[1] On September 30, 2025, the Court in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. Sept. 30, 2025) granted summary judgment to members of a certified Bond Denial Class, defined to include the following individuals:

> All noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

*Id.* The Court issued the following declaratory relief:

> The Court declares that Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration Court's practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

*Id.* The district court's decision was subsequently affirmed in *Rodriguez Vazquez v. Bostock*, 183 F.4th

*Ramirez Villagomez v. Hermosillo*, No. 26-188-TMC, 2026 WL 297627, at *2 (W.D. Wash. Feb. 4, 2026). On February 4, 2026, the Honorable Tiffany M. Cartwright granted petitioner's first habeas petition, concluding that he was a member of the *Rodriguez Vazquez* Bond Denial Class and ordering Federal Respondents to afford him a bond hearing under 8 U.S.C. § 1226(a). *Id.* Petitioner received the bond hearing on February 12, 2026, and the Immigration Judge denied bond, finding petitioner had failed to show he was not a danger to the community. Dkt. 1 ; Dkt. 6 (Decl. of James C. Strong ("Strong Decl."), Ex. C. The bond hearing was audio recorded. Dkt. 6 (Strong Decl.), Ex. A.

On August 2, 2026, petitioner filed the instant federal habeas petition. Dkt. 1. Petitioner alleges that his initial detention without an individualized custody determination violated his due process rights and that his subsequent bond hearing also violated his due process rights and his rights under the Immigration and Nationality Act ("INA") and the implementing regulations. *Id.* at 19-21. Petitioner seeks (1) a declaration that his detention violates the Due Process Clause of the Fifth Amendment, the INA and the implementing regulations, (2) his immediate release from detention or, alternatively, an order compelling the Department of Homeland Security ("DHS") to provide petitioner an individualized determination and a meaningfully opportunity to be heard in the determination process of his eligibility for release within three days, or, alternatively, that this Court conduct a hearing to determine whether petitioner represents a flight risk or danger that justifies continued detention; (3) order respondents to return all personal property, including personal identification documents (other than a passport) and

---

1160 (9th Cir. 2026).

employment authorization documents; and (4) award petitioner reasonable attorney's fees. *Id.* at 22. Respondents filed a response to the petition, petitioner has filed a reply/traverse, and the matter is ripe for review. Dkts. 6, 11.

**BACKGROUND**

Petitioner, a native and citizen of Mexico, entered without inspection on August 18, 2003, in Pima County, Arizona, as a six-year-old child, and was not apprehended upon arrival. Dkt. 1 (Petition) at 2. In 2015, petitioner was granted deferred action under the Deferred Action for Childhood Arrivals ("DACA") program, and he subsequently successfully renewed his DACA status several times -- most recently on August 14, 2019, his DACA status was renewed until October 10, 2025. *See Ramirez Villagomez v. Hermosillo*, 2026 WL 297627, at *2; Dkt. 8 (Decl. of James C. Strong ("Strong Decl.")), Ex. B (I-213 Form) at 5. Petitioner's DACA status expired on October 10, 2025. *Id.* He applied to renew his DACA status on December 16, 2025. *Id.*

Petitioner is married to a U.S. citizen who filed an I-30 petition for him on January 30, 2026, which is still pending. Dkt. 1. Petitioner went through four years of apprentice school, is a certified sound technician and has filed taxes since 2016. *Id.*

The DHS Form I-213 "Record of Deportable/Inadmissible Alien" reflects that on December 9, 2023, petitioner was arrested and charged with Driving Under the Influence (DUI) and reckless driving. Dkt. 8 (Decl. of James C. Strong ("Strong Decl.")), Ex. B (I-213 Form) at 5. The Form reflects those charges were subsequently dismissed. *Id.* The Form reflects on July 5, 2024, petitioner was arrested for reckless driving. *Id.* The Form reflects on November 19, 2025, petitioner was convicted of reckless driving and sentenced to 364 days in confinement. *Id.* At the bond hearing, petitioner testified

that with respect to his November 2025 reckless driving conviction, he had completed a 6-month treatment plan and community service. Dkt. 8 (Strong Decl.) Ex. A (audio recording of February 12, 2026, bond hearing). Petitioner testified that the charges for his 2023 arrest for DUI and reckless driving and for his 2024 arrest for reckless driving were dismissed due to his compliance with conditions set by the court. *Id.*

On January 9, 2026, ICE was conducting a targeted enforcement operation attempting to locate a different individual when they encountered petitioner. Dkt. 8 (Strong Decl.), Ex. B (I-213 Form). The Form I-213 states that officers identified themselves as Border Patrol and began a "consensual encounter" with petitioner. *Id.* The I-213 Form states they asked for identification, and petitioner provided his driver's license. *Id.*

The I-213 Form states they asked if petitioner was a U.S. citizen and he said "yes." *Id.* The I-213 Form states when they checked the DHS database they found he had DACA status that expired on Oct 10, 2025, and that he had "criminal convictions, rendering him ineligible for DACA renewal." *Id.* The I-213 Form states when officers asked why petitioner had claimed to be a U.S. citizen, he stated that he felt like he was. *Id.*

The I-213 Form states that officers arrested petitioner on January 9, 2026 "for being unlawfully present in the U.S." *Id.* The Form states petitioner was served with the Notice to Appear ("NTA") on January 9, 2026. *Id.* The Form also states petitioner was served with an I-200 warrant for his arrest and the I-286 document informing of custody status, though it is unclear when those forms were served.[2] *Id.*

[2] The Court notes that respondents submitted none of these forms with their Return Memorandum, so the Court does not have the benefit of these documents for the record.

On January 17, 2026, petitioner filed his first federal habeas petition arguing he was a member of the *Rodriguez Vazquez* Bond Denial Class and that he was entitled to a bond hearing under 8 U.S.C. § 1226(a). *Ramirez Villagomez v. Hermosillo*, 2026 WL 297627, at *2. On February 4, 2026, the petition was granted and Federal Respondents were ordered to afford petitioner a bond hearing under 8 U.S.C. § 1226(a). *Id.* Petitioner received a bond hearing on February 12, 2026, wherein the Immigration Judge denied bond. Dkt. 1 at 17.

On August 2, 2026, petitioner filed the instant federal habeas petition. Dkt. 1.

## DISCUSSION

### A. Due Process

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . " U.S. Const. amend. V. This right extends to "all persons within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Here, petitioner argues respondents' failure to conduct an individualized custody determination and provide an opportunity for petitioner to be heard in that process either before, or contemporaneous with, his detention violates his due process rights. Dkt. 1 at 19-20. To assess petitioner's due process argument, the Court adopts the reasoning of *E.A. T.-B.*, 795 F. Supp. 3d at 1320-24, in weighing the factors set forth in *Mathews v.*

---

Nevertheless, the Court can decide this case without expanding the record and delaying the decision on petitioner's claims. Furthermore, it appears respondents took the position that petitioner was mandatorily detained pursuant to 8 U.S.C. § 1225(b), not discretionarily detained pursuant to 8 U.S.C. § 1226(a), so their procedures at the time of arrest may not have been geared toward the requirements of § 1226(a).

*Eldridge*, 424 U.S. 319, 335 (1976) which include: (1) The private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335; *Rodriquez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that the *Mathews* test applies "in the immigration detention context.").

1. Private Interest

As to the first factor, petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The Court rejects the notion that petitioner's weighty liberty interest in not being detained is greatly diminished solely because he is a noncitizen in immigration proceedings. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (Freedom from restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action) *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Petitioner was arrested outside of an auto parts store where he was getting a brake light fixed and he has now been detained for 8 months. This clearly deprives him of a constitutionally protected liberty interest. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to

incarcerate non-citizens is always constrained by the requirements of due process[.]”).

“Petitioner’s situation [having previously been granted DACA status and applying for renewal after its expiration] is analogous to petitioners who were encountered and released on supervision.” *Bryan Perez Flores (A No. XXX-XX9-818), Petitioner, v. Warden, et al., Respondents.*, No. 1:26-CV-06283-JLT-EGC, 2026 WL 2532099, at *2 (E.D. Cal. Aug. 27, 2026). “This is because DACA requires a robust showing regarding lack of flight risk or danger to the community, which in essence, is the same determination made by immigration officials under § 1226(a).” *Id.*; *Gamez Lira v. Noem, et al.*, No. 1:25-cv-00855-WJ-KK, 2025 WL 2581710, at *2–3 (D.N.M. Sept. 5, 2025) (“[t]o be eligible for DACA, applicants must demonstrate that they came to the United States before the age of 16, have continuous residence in the United States since 2007 and undergo a criminal background check. *See* 8 C.F.R. § 236.22(b)(1)–(6).”).

If the government is aware of a noncitizen’s presence in the country without legal status and “acquiesce[es]” in their continued liberty, “reliance on [their] freedom create[s] a constitutionally protected liberty interest that cannot be extinguished without due process.” *A.B.J.C. v. Hermosillo*, No. 2:26-CV-00185-JNW, 2026 WL 497097, at *3 (W.D. Wash. Feb. 23, 2026). In the *A.B.J.C.* case, the Court granted release and found, under *Mathews*, that where the government released petitioner on an OREC in 2020, affirmatively moved to dismiss his removal proceedings in 2022, and acquiesced in his freedom for six years, petitioner’s reliance on his freedom created a constitutionally protect liberty interest requiring due process consisting of pre-deprivation notice and a hearing before a neutral decisionmaker. *See also, Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441 at *2 (N.D. Cal. Feb. 25, 2026) (Granting habeas

petitioner's motion for temporary restraining order and directing release where petitioner entered the United States on a nonimmigrant visa and subsequently applied for asylum; immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration of status. The Court reasoned petitioner had a protected liberty interest because, "[a]lthough the government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); *Kalkan v. Chestnut*, No. 1:26-CV-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026); *Carriollo v. Albarran*, No. 3:26-CV-05836-JSC, 2026 WL 1734895, at *2 (N.D. Cal. June 16, 2026) (Granting habeas petitioner's motion for preliminary injunction and directing petitioner's release where petitioner entered on a visa, applied for asylum and the government did not detain petitioner for several years after the visa expired, reasoning "[t]hat the government has not sought to detain Petitioner over the past six years while his immigration applications have been pending reflects a determination by the government that he was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless he no longer meets those criteria."); *Vazquez v. Mullin*, No. C26-2039-KKE, 2026 WL 1911507 (W.D. Wash. July 2, 2026) (granting habeas petition and directing release under *Mathews* analysis where petitioner's visa expired and the government did not detain petitioner for over five years thereafter).

Having been previously granted DACA status, which was renewed several times, and having lived in the community for 23 years and over those years marrying a United

States Citizen, working, and forming ties to the community, petitioner has developed a significant liberty interest in not being detained. The Court finds this factor weighs heavily in petitioner's favor.

2. Risk of Erroneous Deprivation

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards. *Mathews*, 424 U.S. at 335.

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Yet there "may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 - *12 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon*, 494 U.S. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031-1032, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

If a noncitizen is released after an evaluation of their dangerousness and flight risk, their re-arrest and re-detention generally requires a showing of a material change in circumstance. *See, e.g.*, *dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (granting habeas relief and immediate release where government presented no evidence that "a change in circumstances" supported its decision to revoke the IJ's bond order); *Saravia v. Sessions*, 280 F. Supp. 3d 1168,

1197 (N.D. Cal. 2017) (citing *Sugay* and noting government counsel's representation that "DHS has incorporated [*Sugay*'s] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer"), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Here, after his most recent DACA renewal in 2019, petitioner was arrested and charged with DUI and reckless driving in 2023 and was arrested and charged with reckless driving in 2024. Petitioner testified at the bond hearing that these charges were dismissed after he complied with Court requirements for a year. Petitioner was convicted of reckless driving in November 2025 and the Form I-213 reflects petitioner was sentenced to 364 days in confinement. But at the bond hearing petitioner testified that he completed a 6-month treatment plan and completed community service as the sentence for that conviction and petitioner was not in custody serving a sentence when he was detained on January 9, 2026.

8 C.F.R. § 236.22(b) provides, in relevant part, that:

> a request for deferred action under this section may be granted only if USCIS determines in its sole discretion that the requestor meets each of the following threshold criteria and merits a favorable exercise of discretion:…
> (6) Criminal history, public safety, and national security. The requestor must not have been convicted (as defined in section 101(a)(48) of the Act and as demonstrated by any of the documents or records listed in § 1003.41 of this chapter) of a felony, a misdemeanor described in this paragraph (b)(6), or three or more other misdemeanors not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, or otherwise pose a threat to national security or public safety. For purposes of this paragraph (b)(6) only, expunged convictions, juvenile delinquency adjudications, and convictions under State (including U.S. territory) laws for immigration-related offenses are not considered disqualifying convictions. For purposes of this paragraph (b)(6) only, a single misdemeanor is disqualifying if it is a misdemeanor as defined by Federal law (specifically, one for which the maximum term of imprisonment authorized is 1 year or less but greater than 5 days) and that meets the following criteria:

> (i) Regardless of the sentence imposed, is an offense of domestic violence, sexual abuse or exploitation, burglary, unlawful possession or use of a firearm, drug distribution or trafficking, or driving under the influence; or
>
> (ii) If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody and, therefore, does not include a suspended sentence.

The Form I-213 shows that petitioner was detained not based on an assessment of flight risk or dangerousness but based on the determination by the arresting officer that his DACA had expired on Oct 10, 2025, and that he had "criminal convictions, rendering him ineligible for DACA renewal."

But there are significant questions as to whether this is, in fact, the case. The Form I-213 form shows petitioner's only misdemeanor conviction in November 2025 resulted in a sentence of 364 days in custody. But, petitioner was not in custody for that conviction when he was detained in January 2026, and his subsequent testimony at the bond hearing that he completed a 6-month treatment plan and community service as his sentence, raises serious questions as to whether petitioner served a custodial sentence that would automatically disqualify him under 8 C.F.R. § 236.22(b).

Thus, there are, at a minimum, significant questions as to whether petitioner was in fact ineligible for DACA renewal as the detaining Officers concluded and asserted as the basis for his detention.

Furthermore, the record shows that petitioner submitted his DACA application for renewal on December 16, 2025, which he represents included information regarding his criminal history, and appeared for a biometrics appointment for his DACA application renewal on January 7, 2026 – just two days before his detention by ICE – where he provided various information, including his fingerprints. Dkt. 1 at 14. But petitioner was

not detained at that time nor were questions or concerns raised at that time by officials regarding any potential dangerousness to the community.

Petitioner was not provided with adequate notice of the allegations or an opportunity to respond prior to, during, or immediately after his arrest. There was no neutral decisionmaker, no meaningful notice, and no meaningful opportunity to contest ICE's assertions before or at the time of his detention.

There does not appear to have been an assessment of petitioners' flight risk or dangerousness to the community either prior to, during, or immediately after his detention. Rather, in detaining petitioner, the officers based their determination that petitioner should be detained on their assessment that petitioner's DACA status had expired and his criminal convictions made him ineligible for DACA renewal, and there are significant questions as to whether this conclusion was accurate. Furthermore, the record shows petitioner's DACA renewal application was subsequently denied not because of his criminal history but solely because under 8 C.F.R. 236.23(a)(2) "USCIS lack[ed] the authority to approve [petitioner's] request because [he was] in immigration detention as of the date of [the] adjudication [of his application.]" Dkt. 11-2 (USCIS Decision on DACA application). Thus, petitioner's detention based apparently upon the assessment that petitioner would not be eligible for DACA renewal (for which the record raises significant questions), prevents petitioner from obtaining a fully evaluated formal decision as to whether he is in fact eligible for DACA renewal.

Petitioner did receive a bond hearing under 1226(a), over a month after he was detained and only after he filed his first habeas petition and the hearing was ordered by Judge Cartwright. Dkt. 6 (Strong Decl.), Ex. A. At this hearing petitioner bore the burden

of showing he was not a flight risk or a danger to the community. *Id.* Even with this post-deprivation hearing, the process results in a serious risk of erroneous deprivation of a protected interest, and the probable value of additional or substitute procedural safeguards is substantial.

The Court finds that, under the particular circumstances of this case – including that petitioner was in the process of renewing his DACA application when he was detained based on a premature conclusion for which serious questions remain that petitioner would not qualify for DACA renewal, and without a pre-deprivation or even contemporaneous evaluation of his flight risk or dangerousness -- a post-deprivation bond hearing where petitioner bears the burden to show he is not a risk of future dangerousness, and he is not likely to fail to appear, is an inadequate procedural safeguard.

The Court finds, under the circumstances, the risk of erroneous deprivation without additional process remains high.

Thus, the Court finds the second *Mathews* factor favors petitioner.

3. The Government's Interest

The third and final *Mathews* factor also weighs in petitioner's favor. *Mathews*, 424 U.S. at 335. Respondents' interest in civil detention without a hearing at a meaningful time is low. *E.A. T.-B.*, 795 F. Supp. 3d at 1323-24 (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.'").

The Court accordingly finds petitioner has a protected liberty interest in his

continued freedom from detention and all the *Mathews* factors weigh his favor. Petitioner's detention violated Due Process.

In *Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1206-07 (9th Cir. 2022), the Ninth Circuit held that "the existing agency procedures sufficiently protected [petitioner's] liberty interest and mitigated the risk of erroneous deprivation. *Rodriguez Diaz*, 53 F.4th 1209. The Court stated:

> Pursuant to § 1226(a) and its implementing regulations, when ICE initially detained Rodriguez Diaz, an ICE officer made an individualized custody determination. *See* 8 C.F.R. § 236.1(c)(8).[3] This involved evaluating [petitioner's] likelihood of "appear[ing] for any future proceedings" and potential "danger to property or persons."

*Id.*

Multiple courts have held that 1226(a) requires an individualized custody determination *before* detention. *See, e.g.*, *Pastrana-Beltran v. Mullin*, No. 26-CV-2657 RER), 2026 WL 1398609 (E.D.N.Y. May 19, 2026) ("…section 1226(a) affords [petitioner] an initial custody determination before exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk."); *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20 Civ. 2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020) (holding that, before detention "§ 1226(a) and its implementing regulations require ICE officials to make an individualized custody

---

[3] The provision reads: "Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding. Such an officer may also, in the exercise of discretion, release an alien in deportation proceedings pursuant to the authority in section 242 of the Act (as designated prior to April 1, 1997), except as otherwise provided by law." 8 C.F.R. § 236.1(c)(8).

determination"); *Lopez Benitez v. Francis,* 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025) ("If all noncitizens subject to § 1226(a) could simply be detained on a categorical (or arbitrary) basis without any kind of individualized assessment, it would make little sense to permit such individuals an opportunity to challenge their detention by an appeal before an immigration judge on the basis of specific factors such as dangerousness or flight risk."); *Curimilma Quille v. Blanche,* No. 26-CV-2818 (HG), 2026 WL 1453889 , *4-*5 (E.D.N.Y. May 22, 2026) (holding petitioner was denied due process because ICE's initial custody determination was inadequate and 1226(a) requires an individualized custody determination); *Dos Reis v. McShane*, No. CV 26-3775, 2026 WL 1746649, *4 (E.D. Pa. June 17, 2026) ("The initial [1226(a)] custody determination requires "an individualized determination as to ... whether the noncitizen is a 'danger to property or persons' and is 'likely to appear for any future proceeding.'").

Here, no evidence in the record suggests that ICE made an individualized custody determination regarding danger or flight risk factors before or contemporaneously with petitioner's detention. As discussed above, the only evidence presented by the respondents is the I-213 Form, which does not identify any individualized assessment of petitioner's likelihood of appearing at future proceedings or potential for future dangerousness. Rather, that assessment was limited to finding petitioner's DACA status had expired and although he had a pending DACA application, the officers' conclusion that petitioner's criminal history made him ineligible for DACA renewal – a conclusion for which the record shows serious questions remain.

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that the *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189,

1206–07 (9th Cir. 2022). After applying the test, the Court held "1226(a)'s procedures satisfy due process, both facially and as applied to [petitioner]." Even so, the Court expressly stated:

> "In so holding, we do not foreclose all as-applied challenges to § 1226(a)'s procedures. "Due process is a flexible concept that varies with the particular situation." *See Yagman*, 852 F.3d at 863 (quoting *Shinault v. Hawks,* 782 F.3d 1053, 1057 (9th Cir. 2015)). The government agrees that its position here does not mean detained aliens can never bring as-applied due process challenges to § 1226(a)."

*Id*. at 1213-14.

The purpose of habeas corpus is to return the petitioner "to the position he would have been in if the [constitutional] violation never occurred." *Lujan v. Garcia,* 734 F.3d 917, 935 (9th Cir. 2013) (simplified; citing *Nunes v. Mueller,* 350 F.3d 1045, 1057 (9th Cir. 2003)). Because a post-deprivation hearing would, and did, occur only after detention and, under the circumstances, would not address an erroneous deprivation of liberty at a meaningful time, it is not an effective remedy. *E.A. T.-B.*, 795 F. Supp. 3d at 1323-24 (quoting *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal.). ("'Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.'"); *see also Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ.").

**CONCLUSION**

For the reasons stated above, the petition for writ of habeas corpus (Dkt. 1) is GRANTED, and the Court ORDERS as follows:

(1) The respondents shall release petitioner from custody within 24 hours of the filing of this Order.

(2) No later than 48 hours after petitioner's release the respondents must file with the Court a declaration confirming the date and time petitioner was released from custody.

(3) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining petitioner unless and until he is provided with adequate notice and a hearing, consistent with due process, before an Immigration Court to determine whether re-detention is appropriate.

(4) Respondents are ordered to return all personal property, including personal identification documents (other than a passport) and employment authorization documents to petitioner upon his release.

(5) The Court will entertain any appropriate post-judgment motion for attorney's fees.

Dated this 3rd day of September, 2026.

Theresa L. Fricke
United States Magistrate Judge